UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

TERRY POWELL,

      Petitioner,

v.                    Case No: 5:13-cv-327-Oc-29PRL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS
and FLORIDA ATTORNEY
GENERAL,

      Respondents.[1]

_____

## OPINION AND ORDER

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Terry Powell ("Petitioner") who is presently confined at the Reception and Medical Center in Lake Butler, Florida (Doc. 1, filed July 9, 2013). Petitioner, proceeding *pro se*, attacks the convictions and sentences entered by the Fifth Judicial Circuit Court in Marion County, Florida for aggravated fleeing or attempting to elude and resisting a law enforcement officer without violence. Id. at 1.

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004)(citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

At this Court's direction (Doc. 7), Respondent filed a response to the petition (Doc. 9). Petitioner filed a reply (Doc. 12).

Petitioner raises nine claims in the instant petition (Doc. 1). Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be denied. Because the Court may resolve the petition on the basis of the record, an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

I.   **Procedural and Factual Background**

Petitioner was charged by information with burglary of a dwelling with battery (count one), battery (count two), and felony fleeing or attempting to elude (count three)(App. A).[2] Petitioner was also charged with the misdemeanor offense of resisting an officer without violence (App. B).

At a June 8, 2009 pre-trial hearing, Petitioner, who was representing himself, indicated that he would like to have an attorney represent him, but he would not, under any circumstances, waive his speedy trial rights (App. D at 7-8). Because Petitioner

---

[2] Unless otherwise indicated, references to appendices or exhibits are to those filed by Respondent on December 20, 2013.

had a conflict with the public defender's office, conflict counsel was appointed. Id. at 10.

On June 12, 2009, a hearing was held on the state's motion to strike Petitioner's demand for a speedy trial (App. F). The state argued that Petitioner had sought discovery after his speedy trial demand. Id. at 3-4. Conflict counsel Jack Nugent ("Nugent") conceded that the state's motion was well-founded and argued that he needed time to prepare a defense. Id. at 4, 11. Petitioner interrupted, stating that he would not waive his speedy trial rights and threatened to fire Nugent as counsel. Id. at 11. The trial court struck Petitioner's demand for a speedy trial, but explained to Petitioner that he was still within his speedy trial window. Id. at 13. Petitioner reiterated his position that he would not waive his speedy trial rights under any circumstance. Id. at 15.

At a September 10, 2009 pre-trial hearing on Nugent's motion to sever, Petitioner advised the court that he wished to fire Nugent because of what he believed was an unreasonable delay in getting to trial (App. G at 16-19). Petitioner then argued that the state had violated discovery by not timely providing him with a recorded copy of the victim's statement. Id. at 19-20. The state explained that the CD had been disclosed, but it was still working on getting a copy to the defense. Id. at 21. Petitioner became hostile to both the Court and Nugent, and threatened to

call the trial judge as a witness at his trial. Id. at 22-24. The trial court cautioned Petitioner that if he continued to be rude, unprofessional, and discourteous and continued to interrupt the court proceedings, Petitioner would either be gagged or removed from the courtroom. Id. at 23-24. The following exchange occurred:

> Petitioner: On the record, I fire him. And he's not doing what I ask, so the appeal of you, unsufficient (sic) counsel will work because you had it until July, and also you're going to be called as a witness and I'm going to make sure I say it in front of the jury, Willard Pope is my first witness I'm calling as pro se.
>
> COURT: Mr. Powell, I'm going to remind you what I said earlier.
>
> PETITIONER: I don't want to hear that shit. I'm done.
>
> COURT: Mr. Powell –
>
> PETITIONER: I can go.
>
> COURT: Mr. – you're gonna – you don't have to listen, but I'm going to say it, Mr. Powell, for the record. If you conduct yourself in this fashion in the course of your trial, I will remove you from the courtroom so you won't have the opportunity to shine yourself in front of the jury. Do you understand?
>
> PETITIONER: (no verbal response)

> COURT:          He has given no response.  But
>                 for the record, make no mistake
>                 of it, Mr. Powell, if you
>                 conduct yourself in this
>                 fashion in the course of your
>                 trial, you will be removed.
>                 All right.

(App. G at 24-25).

Five days after the foregoing exchange, Petitioner filed a motion seeking a Faretta hearing and a Nelson inquiry.[3]  The record does not indicate whether the motion was ruled upon.  However, on September 21, 2009, prior to voir dire, Petitioner asked for a substitute attorney (App. I at 3), and the request was denied.  Id. Petitioner then informed the court that he was firing Nugent, and would fire him "in front of the jury." Id. at 4.  The court noted:

> Mr. Powell, since we have started with you,
> you have been continuously disruptive.  You
> have been stubbornly defiant.  You have been
> unruly.  You have been disobedient.  You have
> been disrespectful.  The last time you were
> in here, you cursed.  You interrupt the Court.
> You talk over the Court.  You've cursed in
> open court.
>
> Your conduct, Mr. Powell, is an affront on the
> decorum of my courtroom.  And I want you to
> understand that I'm going to give you
> opportunity, Mr. Powell, to behave yourself
> and to conduct yourself as a gentleman.  But
> your conduct in general is intended to

---

[3] In Faretta v. California, 422 U.S. 806 (1975), the United States Supreme Court held that criminal defendants have a constitutional right to refuse counsel and represent themselves in state criminal proceedings. Under Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973), when it appears to a trial judge that a defendant wishes to discharge his court appointed counsel, the judge should make an inquiry of the defendant as to the reason for the request to discharge.

embarrass  or  hinder  or  obstruct  our
proceedings.

Id. at 5.  Petitioner was warned that if he continued to disrupt
the proceedings, he would be removed from the courtroom, and his
trial would be conducted in his absence. Id. at 6.  Subsequently,
Petitioner interrupted the proceedings stating to the court that
"[y]ou're not my judge.  You're a witness." Id. at 7.  Petitioner
was removed from the courtroom. Id.

When Petitioner was returned to the courtroom, the trial judge
advised him:

> Mr. Powell, before we start, I want to make
> sure that we're clear.  First of all, on your
> indications that you are firing Mr. Nugent and
> intend to proceed *pro se*, I want to make a
> finding on the record for you, sir, that the
> Court finds you are not competent to represent
> yourself or make competent decisions regarding
> your own representation.
>
> So I'm not going to permit you to waive the
> assistance of Mr. Nugent.  One of those
> reasons is because you are so unruly that you
> could not conduct a proper inquiry.  And it
> is apparent to this Court that you are using
> whatever process is convenient to you at the
> time to thwart our proceedings.
>
> In addition to that, I want you to understand
> that I will not tolerate any outbursts from
> you, any cursing from you, any generally
> disruptive or unruly behavior.  At the very
> first outburst from you, Mr. Powell, I will
> have you removed.  As long as you behave
> yourself, conduct yourself in a gentlemanly
> manner, I will allow you to remain.  But I
> will not permit you to disrupt these
> proceedings.

(App. I at at 9-10).   At Petitioner's protest, the court clarified
that it found Petitioner to be not competent to represent himself
and  noted  that  it  was  Petitioner's  intent  to  disrupt  the
proceedings.  Id.   The court cited England v. State, 940 So. 2d 389
(Fla. 2006) and Johnson v. State, 906 So. 2d 1149 (Fla. 1st DCA
2005) to support its action. Id. at 13.

Petitioner then listed the reasons he believed his counsel to
be ineffective, noting that Nugent had "done told [him] he's not
going to give his best for [him]." (App. I at 11-12).   Nugent was
allowed to respond:

> Thank you, Your Honor.  As far as me telling
> Mr. Powell that I think he's guilty, what I
> told Mr. Powell is after we watched the video
> of the chase, I said that the jury is going to
> find him guilty.  And that was in reference
> to the plea negotiations that I was discussing
> with Mr. Powell as to the five-year offer
> followed by five years of probation.
>
> At  no  time  did  I  tell  Mr.  Powell  that  I
> wouldn't represent him to my fullest.  I've
> never said that to any client and I never said
> that to Mr. Powell, ever.

Id. at 12-13.

Petitioner's trial was held on September 22, 2009 (App. M).
During the victim's testimony, the jury was removed because the
state objected to some of Nugent's questions. Id. at 39-40.  When
Petitioner  interrupted  Nugent's  answer  to  a  question  from  the
Court, he was advised to keep his "mouth shut." Id. at 40.   The
court told Petitioner that he was not "asking," but was "telling."

- 7 -

Petitioner replied that he "really don't give a fuck." Id.
Petitioner then again attempted to fire his attorney. Id.
Petitioner was found in contempt of court, after which Petitioner
told the judge to "[g]o fuck yourself again. Contempt that in
court, you dick sucking bitch. Don't put your mother fucking
hands on me." Id. at 42. Petitioner was removed from the
courtroom. Id.

Petitioner was later returned to the courtroom, and the court
reiterated to Petitioner that he would be removed from the
courtroom for the duration of his trial if he acted out again (App.
M at 56). During Nugent's re-cross examination of the victim,
Petitioner spoke out. The jury was escorted out of the room again.
The court admonished Petitioner:

> Mr. Powell, I've instructed you ad nauseam
> about being disruptive. You are sitting at
> the table. You are answering the questions
> that are being asked by the attorney. You are
> making gestures that [are] intended to be
> disruptive. I am having you removed from the
> courtroom. I have indicated to you repeatedly
> that I'm not going to tolerate your conduct,
> Mr. Powell. You can take him to the back.

Id. at 56. Petitioner responded to the judge, "I wasn't doing
nothing. You're just mad and – run another 180 days and suck a
dick again. Fuck boy." Id. The court asked that Petitioner be
brought back into the courtroom, and he asked Petitioner to say
anything else he would like to say. Id. Petitioner once again
stated that he wanted to fire his attorney, but he wanted to do it

in front of the jury.  Id. at 57.  He also stated that he wanted the judge to recuse himself.  Id.  When asked by the court why he should not be held in contempt, Petitioner offered, "[y]ou know, I should.  Give me another 180 days, because you obviously think that you control my life[.]"  Id.  Petitioner was found to be in contempt for a second time and ordered removed from the courtroom. Id. at 57-58.  Petitioner answered "—on the record – and – suck a dick again.  Do another 180 days, fuck boy.  I like that bullet that went in your fucking eye, fuck boy."  Id. at 58.  Petitioner was then removed from the courtroom.  Id.  Because Petitioner was yelling so loudly, he was moved to a holding cell downstairs.  Id. at 60.  Nugent asked the judge whether he should recuse himself, based upon Petitioner's statements, but the judge noted that it would not matter to Petitioner who presided over his case.  Id. at 58-59.  Later, outside of the presence of the jury, the judge stated for the record.

> All right.  While we're out and before we take
> our break, I just wanted to say a couple of
> things for the record regarding what Mr.
> Nugent's comment earlier regarding
> understanding if I recused myself.  I want to
> say for the record that I think – it appears
> anyway to the Court that Mr. Powell's conduct
> is intended to disrupt the proceedings, and
> he's intending to say and do things that would
> result in this matter being carried over, so
> – but I wanted the record to be clear that his
> removal from the courtroom was because of his
> conduct, not just interrupting the proceedings
> but being such that we could not continue with
> him present in the courtroom.  And based upon
> the conduct that I've observed with Mr. Powell

- 9 -

– Mr. Nugent, you provided me with that memorandum and, of course, I had already done my own research on it regarding the three alternatives the Court has.  One, holding him in contempt, and I've done that twice; and then you've seen – which is pretty much what I expected, that contempt would have no effect on him as far as dissuading him from his conduct in any way.  And it appears that the contempt has done nothing to accomplish dissuading him from that kind of conduct.  And the next alternative would be to bind and gag him, and I suspect that – it appears to the Court from his conduct that binding him and gagging him would just put him in a posture of physically showing out in front of the jury and further disrupting the proceedings even being bound and gagged which is why I resolved that the only realistic option would be to remove him from the courtroom because of his behavior.  And of course, the record's clear that we gave him another chance after some pretty egregious language to conduct himself in a civil manner.

. . .

I was going to suggest to you Mr. Nugent, that maybe on a lunch break you might go downstairs and talk with Mr. Powell about him – whether he's going to testify or not.  And if he intends to testify, then of course, he and I would need to have another discussion about any conduct on his part on the witness stand that would tend to further disrupt the proceedings.  I can anticipate things going far beyond the limit, the realm of the questions that he is asked.  I just foresee that.  But in any event, if – we'll see how it goes.

(App. M at 74-76).  Petitioner ultimately testified on his own behalf and was allowed to remain in the courtroom from that point on.  Id. at 160-253.

Petitioner was acquitted of the burglary and battery charges, but was convicted of felony fleeing or attempting to elude and resisting an officer without violence (App. N). Two orders of contempt were entered against Petitioner; each sentencing him to 180 days of confinement consecutive to any other period of incarceration (App. O).  For the criminal convictions, Petitioner was sentenced to ten years in prison for the felony fleeing and to time served for resisting an officer without violence (App. Q). Petitioner's convictions and sentences were affirmed by Florida's Fifth District Court of Appeal (App. T); Powell v. State, 46 So. 3d 64 (Fla. 5th DCA 2010).

On May 29, 2011, Petitioner filed a state petition for writ of habeas corpus which alleged that appellate counsel was ineffective (App. V).  The motion was denied on March 21, 2012 (App. X).

On September 1, 2011, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (App. Z). After an evidentiary hearing (App. KK), the motion was denied (App. LL).  Florida's Fifth District Court of Appeal per curiam affirmed (App. PP); Powell v. State, 115 So. 3d 373 (Fla. 5th DCA 2012).

Petitioner filed the instant petition on March 27, 2013 (Doc. 1).

## II.  **Governing Legal Principles**

### A.  **Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")**

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  White v. Woodall, 134 S. Ct. 1697, 1702 (2014).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362,

412 (2000)).  That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. White, 134 S. Ct. at 1706 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable

manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented

in the state-court proceeding") (dictum); Burt v. Titlow, 134 S.
Ct. 10, 15-16 (2013) (same).

**B. Standard for Ineffective Assistance of Counsel**

In Strickland v. Washington, the Supreme Court established a
two-part test for determining whether a convicted person is
entitled to relief on the ground that his counsel rendered
ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner
must establish that counsel's performance was deficient and fell
below an objective standard of reasonableness and that the
deficient performance prejudiced the defense. Id. This is a
"doubly deferential" standard of review that gives both the state
court and the petitioner's attorney the benefit of the doubt.
Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 131 S. Ct.
1388, 1403 (2011)).

The focus of inquiry under Strickland's performance prong is
"reasonableness under prevailing professional norms." Strickland,
466 U.S. at 688-89. In reviewing counsel's performance, a court
must adhere to a strong presumption that "counsel's conduct falls
within the wide range of reasonable professional assistance." Id.
at 689. Indeed, the petitioner bears the heavy burden to "prove,
by a preponderance of the evidence, that counsel's performance was
unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir.
2006). A court must "judge the reasonableness of counsel's
conduct on the facts of the particular case, viewed as of the time

of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

When reviewing an ineffective assistance of appellate counsel claim, the standard of proof and standard of review are the same in the context of ineffective assistance of appellate counsel as in the context of ineffective assistance of trial counsel. Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984) (superseded by statute on other grounds).

C.   **Exhaustion and Procedural Default**

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has

exhausted all means of available relief under state law. Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)
> (i)    there is an absence of available State corrective process; or
>
> (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1) (2012).

Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998). In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the

petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).  Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. Coleman, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179-80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999); Murray v. Carrier, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 479-80 (1986).  Actual innocence means factual innocence, not legal insufficiency.  Bousley v. United States, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995).  In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

## III. **Analysis**

### A.    **Claim One**

Petitioner asserts that his appellate counsel was ineffective for misrepresenting the facts in Petitioner's initial brief on direct appeal (Doc. 1 at 5).  Specifically, Petitioner argues that appellate counsel misrepresented to the appellate court that "Petitioner only tried to fire Mr. Nugent after the start of trial. This was a blatant lie, which Counsel told this Court, in which he perpetrated fraud upon this Court and made this Court make a faulty

ruling in Petitioner's appeal." <u>Id.</u> at 8.[4] Petitioner raised this claim in his state petition for writ of habeas corpus where it was denied, without opinion, by Florida's Fifth District Court of Appeal (App. V; App. X).

Petitioner does not point to the portion of his brief on direct appeal that states that Petitioner only tried to fire his counsel after the beginning of trial. Moreover, this Court has read the entire appellate brief and cannot find any portion of the brief that cannot be completely reconciled with the record. Nowhere in the brief did appellate counsel make fraudulent or otherwise false statements. Because Petitioner's allegations are completely refuted by the record, he cannot satisfy the first prong of the <u>Strickland</u> test, and Claim One is denied pursuant to 28 U.S.C. § 2254(d). <u>See also</u> discussion <u>infra</u> Claim Two.

**B.   Claim Two**

Petitioner asserts that the trial court erred by failing to conduct a <u>Faretta</u> or <u>Nelson</u>[5] hearing to determine if he wished to

---

[4] Petitioner argues that appellate counsel's failure should be treated as a criminal contempt of court and suggests that appellate counsel should be criminally charged (Doc. 1 at 8).

[5] Nowhere in his brief on appeal or Rule 3.850 motion did Petitioner raise the issue of a <u>Nelson</u> violation. Accordingly, any claim based upon a <u>Nelson</u> violation is unexhausted. Petitioner has not asserted cause for the default, nor resulting prejudice. Neither has Petitioner presented new evidence of actual innocence so as to excuse the procedural default of a <u>Nelson</u> claim. In addition, the argument presented in the instant petition appears to be directed solely towards an alleged <u>Faretta</u> violation.

waive his right to counsel (Doc. 1 at 10).   Although Petitioner does not clearly describe the exact factual underpinnings of Claim Two, he references numerous pre-trial instances in which he attempted to fire his counsel, and argues that he had "a right under the sixth and fourteenth amendments to proceed without counsel." Id.

Respondent argues that this claim is unexhausted and procedurally barred because "the claim raised on direct appeal only dealt with Petitioner's allegation of the [trial court's] failure to hold a Faretta hearing *during trial*[.]" (Doc. 9 at 30) (emphasis added). Respondent is correct.   On direct appeal, appellate counsel argued that the trial court should have held a Faretta hearing after Petitioner's outburst at trial during the cross examination of the victim. See discussion supra Claim One. Therefore, Petitioner has procedurally defaulted this claim because he failed to pursue and fairly present it in the available state proceedings.   As a result, this Court will not address the claim on the merits unless Petitioner shows cause for the default and resulting prejudice. Spencer, 609 F.3d at 1179–80.

In his reply, Petitioner does not argue cause for the default of Claim Two.   Rather, he asserts that Claim Two is indeed exhausted and argues that "issue one and two are basically the

---

Accordingly, only the alleged Faretta violation will be addressed by this Court. See also discussion infra Claim Two (dismissing Petitioner's Faretta claim as unexhausted an procedurally barred).

same.  Issue two was raised just to state the correct facts from counsel's argument on direct appeal." (Doc. 12 at 2).  To the extent Petitioner now urges that ineffective assistance of appellate counsel excuses his failure to exhaust Claim Two, the assertion is unavailing.  Ineffective assistance of counsel will excuse a procedural default only when the ineffective assistance claim itself has been independently raised and properly exhausted in the state court. Edwards v. Carpenter, 529 U.S. 446, 452 (2000)(a federal habeas court is barred from considering a procedurally defaulted "ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim" unless the petitioner establishes "the cause-and-prejudice standard with respect to [the ineffective assistance claim]"); Murray, 477 U.S. at 489 ("[A] claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."); Hill v. Jones, 81 F.3d 1015, 1830 (11th Cir. 1996) ("[P]rocedurally-defaulted claims of ineffective assistance *cannot* serve as cause to excuse a default of a second claim.") (emphasis in original).  Petitioner did not raise an ineffective assistance of appellate counsel claim based upon appellate counsel's failure to argue that he was due a Faretta hearing.  Rather, the only claim raised in Petitioner's state habeas petition was directed towards appellate counsel's alleged fraud upon the court due to

his "misrepresentation of the facts." (App. V at 2).   The assertions in Petitioner's state habeas petition were insufficient to alert the state court to any argument that appellate counsel was deficient for failing to raise a claim that Petitioner was due a pre-trial Faretta hearing.

Even were the Court to assume *arguendo* that Petitioner's state habeas petition raised the suggested ineffective assistance of appellate counsel claim, the claim is without merit, and it cannot serve as cause for this defaulted claim. See, e.g., Brown v. Virginia, No. 1:10cv162, 2011 WL 1897432, at *3 (E.D. Va. May 18, 2011)("[I]t is well established that a meritless ineffective assistance of counsel claim cannot excuse a procedural default.") (citation omitted); Taylor v. Rivera, No. 07 Civ. 8668, 2011 WL 4471919, at *10 (S.D.N.Y. Apr. 18, 2011)("Petitioner's ineffective assistance of counsel claim therefore lacks merit, . . . and Petitioner cannot rely on it as a basis to excuse his procedural default[.]").

A trial court reversibly errs if it fails to conduct a Faretta inquiry in response to a defendant's unequivocal request to represent himself at trial. See Tennis v. State, 997 So.2d 375, 378 (Fla. 2008) ("Under Faretta and our precedent, once an unequivocal request for self-representation is made, the trial court is obligated to hold a hearing, to determine whether the

defendant is knowingly and intelligently waiving his right to court-appointed counsel.").

In the instant case, appellate counsel could have reasonably concluded that Petitioner made no unequivocal pre-trial request to be relieved of counsel. Petitioner represented himself at a June 8, 2009 hearing when the trial court asked whether he would like to "reconsider representing yourself on this." (App. E at 4). After discussion with the court on the advantages of an attorney, Petitioner told the trial court, "if you want to appoint me an attorney, appoint an attorney. But I'm not waiving my rights." Id. at 7. The judge clarified: "You would like the assistance of an attorney, but you won't want to waive your right to speedy trial?" Id. at 7-8. When Petitioner agreed, the court appointed counsel with the understanding that Petitioner was not waiving speedy trial. Id. at 9. At a June 12, 2009 hearing, Petitioner threatened to fire Nugent, his newly-appointed counsel, because Nugent suggested that he waive his speedy trial rights (App. F at 11). Petitioner backed away from the threat when he was assured by the trial court that he was not waiving speedy trial. Id. at 14-15. At an August 24, 2009 hearing, Petitioner complained to the court that Nugent was not doing everything Petitioner demanded (App. K). The court asked Petitioner whether he wanted to fire him, and Petitioner responded: "I don't know what I want to do yet. I need time to think. That's what I'm doing and you was

denying me a chance to talk to talk to him." Id. at 11.  At a September 8, 2009 hearing, Nugent notified the court that "Mr. Powell's saying he wants to represent himself, Your Honor." (App. L at 4).  Petitioner protested, arguing instead that "I asked you to do something simple and you won't do what I ask." Id.  The court advised Petitioner that "[i]f you are moving to discharge him, you'll need to do that before [September 21]." Id.  Petitioner stated: "No, I'm moving for him to do his job and file certain motions[.]" Id. at 5.  Petitioner made no further requests to fire his attorney on that day.  At a September 10, 2009 hearing, Petitioner asserted:

> He's telling me he's had the case since July and I've been asking him to do certain things since July.  Isn't that sufficient enough time to get some stuff accomplished?  I believe that's more than enough time.  Over 60 days, I believe that's more than enough time.  You know, I might be willing to sign my waiver [of speedy trial] once he's completely off my case and I'll go back to pro se.  So right now I'm going to ask him to remove himself because I'm firing him. I don't want him as my attorney. On record, he's done.  I don't – he – I want all my discovery and everything.

(App. G at 19).  However, later at the same hearing Petitioner asked Nugent to file a motion on his behalf; the court interrupted, noting that Nugent was not obligated to file frivolous motions on Petitioner's behalf. Id. at 22.  Petitioner stated that he was "done with this Court" and he was "going to do what the hell [he wanted] to do." Id. at 22, 25.

Given Petitioner's equivocation and irrational behavior at his pre-trial hearings, the state court did not err in failing to conduct a pre-trial Faretta inquiry. See Gill v. Mecusker, 633 F.3d 1272, 1296 (11th Cir. 2011) (petitioner not entitled to habeas corpus relief since record demonstrated that invocation of right to self-representation was equivocal and not sufficient to invoke Faretta and, therefore, neither the trial court's rejection of petitioner's request to proceed *pro se* nor the Florida appellate court's affirmance thereof, was objectively unreasonable under applicable AEDPA standard); Brown v. Wainwright, 665 F.2d 607, 610 (5th Cir. 1982) (courts should not "quickly infer that a defendant unskilled in the law has waived counsel and has opted to conduct his own defense") (citing Brewer v. Williams, 430 U.S. 387, 404 (1977) (courts must indulge every reasonable presumption against waiver of counsel)).

Even if the Court were to assume that Petitioner's declarations to the trial judge on September 10, 2009 were unequivocal requests for self-representation, the trial court clearly conducted considerable discourse with Petitioner on a number of occasions to determine whether he knowingly and voluntarily sought to represent himself.[6] The trial court made a

---

[6] Significantly, in Faretta, the "hearing" was merely a colloquy between the trial judge and the defendant to determine whether to accede to the defendant's wish to conduct his own defense. Faretta 422 U.S. at 811 n.3.

- 26 -

specific finding on the record that Petitioner was not competent to conduct his own defense due to his unruliness, his inability to conduct a proper inquiry, and because he was merely attempting to manipulate the trial court in order to disrupt the proceedings (App. I at 9-10).

Based on the record, which casts doubt on whether a <u>Faretta</u> violation occurred, this Court cannot conclude that no reasonable appellate counsel would have chosen not to appeal the trial court's alleged failure to conduct a pre-trial <u>Faretta</u> hearing. Accordingly, ineffective assistance of appellate counsel cannot operate as "cause" for Petitioner's procedural default of this claim, and Claim Two is dismissed as unexhausted and procedurally barred.

## C.   Claim Four[7]

Petitioner asserts that Nugent was ineffective for failing to "call, interview, or present witnesses at trial[.]" (Doc. 1 at 14). Specifically, Petitioner argues that Nugent should have called the two Lake County law enforcement officers who arrested him, Richard Powell and Henry Sims who were in the vehicle with him during the high speed chase, and Officer Carla Bassist from the Ocala Police Department. <u>Id.</u>  Petitioner asserts that: (1) the

---

[7] Claim Three is not a stand-alone claim (Doc. 1 at 12). Rather, in Claim Three, Petitioner merely lists the facts supporting Claims Four and Five. <u>Id.</u>  Therefore, Claim Three will not be separately addressed.

Lake County officers would have testified that "they saw at least two other people run from the vehicle"; (2) Richard Powell and Henry Sims would have testified that Petitioner was not the driver of the vehicle; and (3) Officer Carla Bassist would have testified that she observed more than one person in the vehicle and that Petitioner was not the driver. Id. at 14-15.

Petitioner raised this claim in his Rule 3.850 motion (App. Z), and after an evidentiary hearing (App. KK), the post-conviction court denied the claim on the ground that Petitioner "failed to show that he was prejudiced in any way by being represented by Defense Counsel Jack Nugent." (App. LL). Florida's Fifth District Court of Appeal per curiam affirmed (App. PP).

At the evidentiary hearing on this claim, Nugent testified that Petitioner only provided him with the names of potential witnesses Eddie Hernandez, Paul Norman, and Eric Chapel (App. KK at 7, 65). Petitioner also gave Nugent the name of his cousin Ricky as a potential witness, but told Nugent that Ricky could not return to Florida to testify because of pending warrants for his arrest. Id. at 31, 66. In contrast to Nugent's testimony, Petitioner asserted at the hearing that he did provide these witnesses' names to Nugent prior to trial. Id. at 9. Petitioner also asserted that his cousin Ricky was available to testify because he was actually incarcerated in South Carolina at the time

of Petitioner's trial. Id. at 32.[8]  The post-conviction recognized the conflict in the testimony on this point, but specifically found that "[Petitioner] did not provide the witnesses to Defense Counsel and the one that he did provide, Defendant stated that the witness lives in South Carolina and will not be available to testify due to a warrant out for his arrest." (App. LL).

Questions of the credibility and demeanor of a witness are questions of fact.  Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir. 1999).  The AEDPA affords a presumption of correctness to a factual determination made by a state court, and the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).  Moreover, determining the credibility of a witness, "is the province and function of the state courts, not a federal court engaging in habeas review."  Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011); see also Gore v. Sec'y, Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) (recognizing that while a reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing Rice v. Collins, 546 U.S. 333, 341–42 (2006) ("[r]easonable minds reviewing the record might disagree about the

---

[8]  This second statement is in direct conflict with Petitioner's sworn testimony at trial at which he testified that his cousin Ricky was driving the vehicle, but was "[a]ctually in South Carolina with warrants for his arrest." (App. M at 190).

[witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")). Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434 (1983). Petitioner has not shown by clear and convincing evidence that the post-conviction court unreasonably concluded that Nugent was not provided the names of available witnesses in this case and that Petitioner had advised Nugent that Ricky was not available to testify. Because Nugent could not be expected to investigate unavailable witnesses or witnesses of which he did not know, his failure to investigate more witnesses was not constitutionally deficient.

Petitioner also argues that Lake County and Ocala law enforcement officers would have testified favorably for him had they been called as defense witnesses at his trial (Doc. 1 at 14). However, Petitioner did not call these officers as witnesses at his evidentiary hearing and did not present affidavits from them explaining the substance of their putative testimony. Rather, Petitioner's statements regarding these witnesses is based solely upon his own speculation. Habeas courts generally view ineffective assistance claims with great caution when the only evidence of a missing witness's testimony comes from the defendant. See Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir. 1985).

Evidence about the testimony of a putative witness must "generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted); Streeter v. United States, 335 F. App'x 859, 864 (11th Cir. 2009) ("[M]ere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof.") (citing Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001)). Petitioner's speculation on this point does not entitle him to habeas relief.

The state court's conclusion that Petitioner could not show prejudice from Nugent's failure to investigate these witnesses or to present their testimony at trial was not contrary to Strickland, did not involve an unreasonable application of Strickland, and was not based on an unreasonable determination of the facts. Accordingly, Claim Four is denied pursuant to 28 U.S.C. § 2254(d).

**D.  Claim Five**

Petitioner asserts that counsel was ineffective for failing to "present exculpatory evidence from Sgt. Gregory Martin in the form of his patrol vehicle video." (Doc. 1 at 16). Specifically, Petitioner claims that a video of Martin's pursuit of Petitioner (the Martin video) "would have shown that defendant was not driving the vehicle and that no one jumped from the vehicle as it was

moving." Id.  Petitioner further argues that the video would have impeached Officer Martin's testimony at trial because the tint on the car windows would have made it impossible to see who was driving the vehicle and because "no black male or anyone else jumped from the vehicle." Id.

At trial, the state presented the testimony of Officer Martin who testified that he observed Petitioner driving the vehicle involved in the high speed chase (App. M at 107, 115).  He testified that he was within 50 feet of Petitioner, and the car's windows were down. Id. at 115.  He stated that he began following the vehicle, and observed Petitioner conversing with the vehicle's passenger, a black male. Id. at 108.  He saw the black male jump from the car, leaving only Petitioner in the car. Id. at 109. Martin testified that he followed Petitioner as he drove erratically through an apartment complex and proceeded to drive on to the highway.  Martin testified:

> As we passed 316, which is the first flashing light, Mr. Powell went off the road on the far right shoulder around cones, got back on the roadway; as we approached 315, Mr. Powell went on into oncoming traffic causing a small, white pickup truck to hit his brakes and right behind him was an 18-wheeler.  The 18-wheeler hit his brakes, jackknifed, came over into my lane forcing me and Officer Keuntjes off the roadway to where I then totaled my car and I was out of the pursuit.  I had an accident.

Id. at 111.  At least two other law enforcement officers involved in the pursuit of Petitioner's vehicle also identified him as the driver of the vehicle involved in the chase. Id. at 130, 172.

At the evidentiary hearing, Nugent testified that the only police video of which he had possession was played at trial (App. KK at 14).  Petitioner admitted that he had never viewed the alleged Martin video, and the post-conviction court opined that such a video may never have been produced. Id. at 24. Nugent testified that even had such a video been produced, he (Nugent) would likely have tried to keep the jury from seeing it because the video showed at trial was harrowing – literally causing jurors to gasp. Id. at 24-25.  Nugent noted that "it was a very detailed video:  cars running off the road.  Like I told the Court earlier, I wouldn't want the jury to see another video that showed that again." Id. at 34.  Finally, Nugent testified that the video that was shown at trial showed Petitioner's reflection in a side rearview mirror as the driver of the vehicle "as clear as day," and the prosecutor had not pointed that out. Id. at 25, 77. Curiously, in direct conflict with the assertions made in the instant petition (Doc. 12), both at the evidentiary hearing and at his trial, Petitioner admitted that a person *had* jumped out of his car during Martin's pursuit. Id. at 33; App. M at 188.  Given that Petitioner's instant assertion that no one jumped from his car is a new allegation, arising only after his trial and his Rule 3.850

evidentiary hearing, it is unclear how the Martin video could have "impeached" Officer Martin's testimony on this point.

Petitioner has not raised a colorable claim of ineffective assistance of counsel. Rather, he merely asserts, without evidence in support of his assertions, that the Martin video, if it existed,[9] would have exonerated him. Furthermore, allegations in the petition are in direct conflict with Petitioner's statements at the evidentiary hearing and his testimony at trial. Conclusory allegations, particularly when contradicted by a petitioner's own testimony at trial, cannot establish a *prima facie* case of ineffective assistance of counsel. See <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim).

Finally, in light of Nugent's personal observation of Petitioner as the driver of the vehicle in the first video and the jury's negative reaction to the first video, his decision to forego seeking the Martin video could be considered sound trial strategy. Counsel's trial strategy will not be second guessed, as "[j]udicial scrutiny of counsel's performance must be highly deferential." <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (11th Cir. 2000)

---

[9] At the evidentiary hearing, the prosecutor stated that he had "examined the entire file and I do not show any other in-car video in this entire big box we have right here." (App. KK at 41).

(quoting Strickland, 466 U.S. at 689)).   Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983).   Petitioner has not overcome the presumption of reasonableness given a lawyer's trial strategy, and the record before this Court would not support such a conclusion.   Accordingly, the state court's rejection of Claim Five was neither contrary to Strickland nor based upon an unreasonable determination of the facts.   This claim of ineffective assistance is denied pursuant to 28 U.S.C. § 2254(d).

   **E.   Claim Six**

   Petitioner asserts that defense counsel was ineffective for failing to: (1) present an opening statement at the beginning of trial; and (2) move for a judgment of acquittal at the close of the State's case (Doc. 1 at 18).   Specifically, Petitioner argues that if counsel had made an opening statement, "the jury would have heard the defense's theory of what happened and not only the State's[.]" Id.   Petitioner also asserts that he would have been acquitted of resisting arrest without violence if counsel had argued in a motion for a judgment of acquittal that he was arrested by the Lake County Sherriff's Office and not the Ocala Police Department. Id.

At the evidentiary hearing on Petitioner's Rule 3.850 motion, Nugent was asked why he had not presented an opening statement in this case.  He replied:

> I've done over 100 jury trials.  I very rarely present an opening statement because the first couple times I'd give an opening I got contradicted when the evidence actually came – was presented.  So, what normally I do is reserve opening until either my case in chief or I waive it altogether.

(App. KK at 67).  As instructed by Strickland, Petitioner must overcome the presumption that Nugent's decision was the result of sound trial strategy. Strickland, 466 U.S. at 689.  As Petitioner has provided no argument other than the simple assertion that Nugent did not make an opening statement, he has failed to overcome this presumption.  The courts that have addressed this issue have recognized that the decision to waive opening statement is one of reasonable trial strategy. See Jones v. Smith, 772 F.2d 668, 674 (11th Cir. 1985)("The attorneys' decision to waive opening argument at the guilty phase was one of reasonable trial strategy. It left the defense uncommitted to a particular position and thus free to develop any defense that might materialize as the State presented its case."); Moss v. Hofbauer, 286 F.3d 851, 863 (6th Cir. 2002) ("A trial counsel's failure to make an opening statement, however, does not automatically establish the ineffective assistance of counsel."); United States v. Haddock, 12 F.3d 950, 955 (10th Cir. 1993) ("The failure to present an opening

statement itself is not ineffective assistance."); <u>United States</u> <u>v. Mealy</u>, 851 F.2d 890, 909 (7th Cir. 1988) ("[T]he mere fact that counsel did not make an opening statement is not sufficient for a defendant to prevail on a claim of ineffective assistance."). Nugent's strategic choice to forego an opening statement did not render his performance constitutionally deficient.

As to Petitioner's argument that Nugent should have moved for a judgment of acquittal, Nugent testified at the evidentiary hearing that he did not have grounds to move for a judgment of acquittal on any of Petitioner's charges except for the burglary charge, of which Petitioner was eventually acquitted (App. KK at 67). This particular claim is directed towards Petitioner's conviction for resisting a law enforcement officer without violence (Doc. 1 at 18). Petitioner appears to believe that he could not be convicted of resisting Ocala law enforcement officers because he was not actually arrested by the Ocala police; rather he was arrested by Lake County law enforcement officers. <u>Id.</u> This premise is faulty. Petitioner was charged under Florida Statute § 843.02 which states:

> Whoever shall resist, obstruct, or oppose any
> officer . . . , member of the Florida
> Commission on Offender Review or any
> administrative aide or supervisor employed by
> the commission; county probation officer;
> parole and probation supervisor; personnel or
> representative of the Department of Law
> Enforcement; or other person legally
> authorized to execute process in the execution
> of legal process or in the lawful execution of

> any legal duty, without offering or doing
> violence to the person of the officer, shall
> be guilty of a misdemeanor of the first
> degree, punishable as provided in s. 775.082
> or s. 775.083.

Fla. Stat § 843.02.   The statute does not require that the defendant actually be arrested by the officer against whom resistance is offered.   Rather, under Florida law, a defendant who flees from the police is culpable under § 843.02 if: (1) a law enforcement officer issues a lawful order to the defendant to stop; (2) the defendant has knowledge of the order and that it is issued by a law enforcement officer; and (3) the defendant refuses to obey the order. C.E.L v. State. 995 So. 2d 558, 561 (Fla. 2d DCA 2008).   Notably, "the act of resisting, obstructing, or opposing need not be directed toward an attempted arrest." Id. at 562 n.1.[10]

---

[10] Petitioner's confusion on this point may be caused by the First Appearance form filled out by the Lake County court after his arrest (App. B).   Although Petitioner was charged with an offense under Florida Statute § 843.02, the form referred to the offense as "resisting *arrest* w/out violence." Id. (emphasis added).   As is apparent from the foregoing discussion of the elements of an offense under § 843.02, the act of resisting, obstructing, or opposing need not be directed toward an attempted arrest.   See Tillman v. State, 934 So. 2d 1263, 1269 (Fla. 2006)(recognizing that the crime proscribed by section 843.01—resisting an officer with violence—has sometimes been described inaccurately as "resisting arrest with violence")(superseded by statute on other grounds, § 776.051(a), Fla. Stat. (2008)); Jacobson v. State, 476 So. 2d 1282, 1287 (Fla. 1985) ("section 843.02 . . . does not require that the officer be attempting to arrest the suspect"); N.H. v State, 890 So. 2d 514, 516 (Fla. 3d DCA 2005) (noting that the title of § 843.02 is "resisting an officer," not "resisting arrest.").

Evidence was presented at trial that Officer Martin sought to stop Petitioner's car because the police believed Petitioner had been involved in a burglary (App. M at 105-07).  Officer Martin stated that Petitioner then ran a stoplight while he followed with his car's lights and sirens activated. Id. at 108-09.  Petitioner proceeded to flee from police at speeds of up to 130 miles per hour for more than 40 miles during which other vehicles were forced off the road. Id. at 24. 111, 124, 125, 137, 169. Petitioner did not stop until his car was forced off the road by Lake County law enforcement officers, at which time Petitioner crawled from the car's window and ran into the woods where he was eventually found by a police dog. Id. at 137, 162, 166.

Evidence was presented under which a jury could find Petitioner guilty under Florida Statute § 843.02.  Accordingly, any motion for a judgment of acquittal on this count would have been denied. See State v. Williams, 742 So. 2d 509, 510 (Fla. 1st DCA 1999) (recognizing that a trial court should not grant a motion for judgment of acquittal unless the evidence, when viewed in a light most favorable to the State, fails to establish a prima facie case of guilt).  Petitioner cannot show prejudice from counsel's failure to move for a judgment of acquittal, and this claim fails under the second prong of Strickland.

Claim Six is denied pursuant to 28 U.S.C. § 2254(d).

F.    Claim Seven

Petitioner asserts that counsel was constitutionally ineffective for failing to object to his removal from the courtroom during his trial (Doc. 1 at 19). Petitioner urges that he was thereby deprived of his right to be present at trial and participate in his own defense. Id. at 20.

In Illinois v. Allen, 397 U.S. 337 (1970), the United States Supreme Court concluded that a criminal defendant may forfeit the benefit of his constitutional right to be present in the courtroom at every stage of his trial.  The Court held:

> [A] defendant can lose his right to be present
> at trial if, after he has been warned by the
> judge that he will be removed if he continues
> his disruptive behavior, he nevertheless
> insists on conducting himself in a manner so
> disorderly, disruptive, and disrespectful of
> the court that his trial cannot be carried on
> with him in the courtroom. Once lost, the
> right to be present can, of course, be
> reclaimed as soon as the defendant is willing
> to conduct himself consistently with the
> decorum and respect inherent in the concept of
> courts and judicial proceedings.

Id. at 343 (footnote omitted).  In Allen, the Supreme Court reiterated its holding in Snyder v. Massachusetts, 291 U.S. 97 (1934), that, "[n]o doubt the privilege (of personally confronting witnesses) may be lost by consent or at times even by misconduct." Allen, 397 U.S. at 342-43.

Petitioner repeatedly used threatening and inappropriate language in court and was cautioned on numerous occasions that his

continued disruptions would result in his removal from the courtroom. See discussion supra Part I. Petitioner was held in contempt on two separate occasions, but did not stop his inappropriate behavior. The trial court followed the Supreme Court's guidance in Allen by warning Petitioner that continued disruptions would result in his removal (App. G at 23.24, 25; App. I at 5-6, 9-10). After Petitioner was removed from trial during the victim's testimony, the judge explained to Petitioner that it was his disruptive behavior that caused the removal (App. M at 74-76). Petitioner was allowed to stay in the courtroom after he ceased his disruptive behavior.

At the Rule 3.850 evidentiary hearing on this claim, counsel testified that he did not object to Petitioner's removal from the courtroom because he "he didn't want [Petitioner] to display that behavior in front of the jury, which [he was] tending to do. And I thought that was harming [his] chances." (App. KK at 48, 49). Petitioner admits in the instant petition that he "got carried away" at certain points in his trial "and did not conduct himself properly" but blames his disruptive and disorderly behavior on his belief that "counsel was not doing his job properly." (Doc. 1 at 21). Petitioner urges that the trial court's failure to conduct a Faretta hearing prompted his behavior, and was thus the actual cause of his removal. Id.

That Petitioner felt justified in his outbursts does not change the fact that counsel strategically chose not to object to his removal from the courtroom because Petitioner was acting out in front of the jury. Based upon the record, this Court cannot conclude that no competent counsel would have chosen to forego an objection to Petitioner's removal. See Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) ("In order to show that an attorney's strategic choice was unreasonable, a petitioner must establish that no competent counsel would have made such a choice."). Moreover, given Petitioner's obstreperous behavior, coupled with his history of disruption, the trial court was well within the bounds of Allen when it removed Petitioner from the courtroom. Accordingly, any objection to the removal by counsel would have been futile, and Petitioner cannot show prejudice from counsel's failure to object.

Claim Seven fails to satisfy either Strickland prong and is denied pursuant to 28 U.S.C. § 2254(d).

**G. Claim Eight**

Petitioner asserts that the state committed a Brady [11] violation by withholding the video from Officer Martin's patrol

---

[11] In Brady v. Maryland, 373 U.S. 83, 87 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

car (Doc. 1 at 22).  Petitioner asserts that the tape "would have [shown] that no one jumped from the vehicle and that the vehicle[']s windows were in the up position where Sgt. Martin could not view who was driving the vehicle, instead of the windows being in the open position like Sgt. Martin testified to." Id.

"In order to establish a Brady violation, a defendant must prove: (1) that the government possessed evidence favorable to the defense, (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence, (3) that the prosecution suppressed the evidence, and (4) that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense." United States v. Schier, 438 F.3d 1104, 1106 n.1 (11th Cir. 2006) (citing Moon v. Head, 285 F.3d 1301, 1308 (11th Cir. 2002)). "[N]either mere speculation that the prosecution might possess information helpful to the defense nor base assertions, without more, of the presence of exculpatory information in the prosecution's files would be sufficient to warrant a Brady determination." Brown v. United States, Case No. 3:02-cr-14, 2006 WL 1582421, at *2 (M.D. Ga. 2006) (quoting 25 James Wm. Moore et al., Moore's Federal Practice § 616.06[2] (3d ed.1997)).

At the Rule 3.850 evidentiary hearing on this claim, Petitioner argued to the post-conviction court that he should have been provided with the Martin video, but admitted that he had never

actually viewed such video (App. KK at 23-25).  The post-
conviction court pointed out to Petitioner that such a video may
never have existed.  Id. at 24, 39.  Petitioner argued that the
video must have been placed in evidence because at a pre-trial
hearing the state said it was in the process of making videos.  Id.
at 40.[12]  The state's Rule 3.850 attorney told the post-conviction
court that the evidence files contained only the one video that
was shown at trial.  Id. at 41.   Petitioner insisted that the
state must have the video and argued that a Brady violation
occurred because he didn't even "know if [the Martin video] was
favorable to him or not[.]"  Id. at 43.

     This claim fails to satisfy the Brady test.  Petitioner has
not shown that the alleged Martin video actually existed, and if
it did, that the state withheld the video from the defense.  In
order to set forth a Brady claim, a petitioner must show that the
prosecutor actually possessed the Brady evidence before or during
the petitioner's trial.  United States v. Naranjo, 634 F.3d 1198,
1212 (11th Cir. 2011).   "Mere speculation that the evidence was
in the government's possession is not enough."  United States v.
Brown, 2015 WL 412890 (11th Cir. Feb. 2, 2015) (citing Narango,

_____

     [12] Petitioner appears to rely on a portion of the September
10, 2009 pre-trial hearing in which the state assured Nugent that
it was in the process of making a CD of the victim's statement to
the police (App. G at 20-21).  Petitioner does not point to a
portion of the record in which the state admitted that it was
producing the Martin video or that the video actually existed.

634 F.3d at 1212); see also United States v. Jordan, 316 F.3d 1215,
1253 n. 81 (11th Cir. 2004) ("[M]ere speculation or allegations
that the prosecution possesses exculpatory information will not
suffice to prove 'materiality'").   Petitioner has offered no
evidence that the Martin video ever existed.[13]   Accordingly, he has
not satisfied Brady's first prong.

    With regard to Brady's second prong, "[t]here is no Brady
violation where the information is equally accessible to the
defense and the prosecution, or where the defense either had the
information or could have obtained it through the exercise of
reasonable diligence." Provenzano v. State, 616 So. 2d 428, 430
(Fla. 1993).   "[A] Brady claim cannot stand if a defendant knew
of the evidence allegedly withheld or had possession of it, simply
because the evidence cannot be found to have been withheld from
the defendant." Owen v. State, 986 So. 2d 534, 547 (Fla. 2008).

---

    [13] At the Rule 3.850 evidentiary hearing, Petitioner asserted
that the video was "on public record" (Ap. KK at 39).   When pressed
by the post-conviction court as to what this meant, Petitioner
argued that "anything after the trial is closed become [sic] public
record where anybody could actually just ask for it." Id. at 39.
Petitioner then asserted that his daughter's attorney actually had
the video, but when pressed by the post-conviction court as to why
Petitioner had not brought the video to the hearing, Petitioner
acceded that only evidence that was actually placed into evidence
could be retrieved from evidence. Id. at 40-41.   At that point
the state noted "I've examined the entire file and I do not show
any other in-car video in this entire in this entire big box we
have right here." Id. at 41.   The state attorney noted that the
other DVDs in the box contained recordings of 9-1-1 calls or calls
to dispatch. Id. at 42.

Thus, evidence is not suppressed where the defendant was aware of the information.  Petitioner does not deny that he was aware of the existence of or the contents of the alleged Martin video.  To the contrary, in Claim Five, Petitioner argued that he described the contents of the Martin video to counsel "and told counsel to request this video tape from Sgt. Martin's patrol vehicle so counsel could impeach Sgt. Martin and prove his innocence[.]" (Doc. 1 at 17).  In light of Petitioner's knowledge of (or his belief in the existence of) the alleged Martin video, it could not have been "suppressed."

In light of the foregoing, Petitioner is not entitled to relief based on Brady.  Claim Eight is denied pursuant to 28 U.S.C. § 2254(d).

### H.   Claim Nine

Petitioner asserts that trial counsel was ineffective for failing to move to disqualify his trial judge (Doc. 1 at 23).  He appears to base this claim upon unfavorable rulings and activities that occurred at an unrelated January 23, 2009 jury trial over which Judge Pope presided. Id. at 24.  Petitioner also points out that during a pre-trial hearing in the instant case, he told Judge Pope to "suck a dick, fuck boy" for which he was sentenced to 180 days for contempt of court. Id. at 25.  Petitioner also notes that during trial he told Judge Pope to "suck another dick, fuck boy" and "suck a dick fuck boy, like a bullet that went into your

fucking eye." Id.   Petitioner argues that "[b]y these outbursts, counsel should have at least motioned the court to recuse itself at the very least for sentencing." Id.   Petitioner then admits that "Counsel did ask the Judge to recuse himself but Judge Pope said [h]e did not see a reason to recuse himself in which the record clearly shows otherwise." Id.

   After Petitioner's outburst during trial, he was removed from the courtroom and the following exchange occurred:

| | |
|---|---|
| NUGENT: | Your Honor, I apologize for my client's behavior. |
| COURT: | You don't need to apologize Mr. Nugent. |
| NUGENT: | Your Honor, I feel compelled to ask the Court if the Court needs to consider to recuse itself based on what Mr. Powell just said.  That was – to me, it was – I wouldn't be able to fairly try this if Mr. – if someone had said that to me. |
| COURT: | I don't need to recuse myself, Mr. Nugent.  I'm not the one that's on trial. Mr. Powell's on trial. |
| NUGENT: | Yes, sir. |
| COURT: | I suspect, Mr. Nugent, that it wouldn't make any difference who was sitting up here trying this case. |
| NUGENT: | I agree, your Honor.  I just don't think Mr. Powell would have used such a derogatory statement to any other judge. |
| COURT: | Well, I think Mr. Powell – you know, Mr. Powell might be doing that in an effort to cause   to recuse myself and to disrupt these proceedings, |

> Mr. Nugent.  I think that might be
> exactly what he wants to accomplish
> is to disrupt these proceedings by
> saying something that would cause me
> to get to the point where I can't be
> fair and impartial. I'm not there.

(App. M at 59).  Accordingly, the record shows that Nugent did ask

the trial court to consider recusing itself based upon Petitioner's

outbursts and poor conduct during trial.  His request was denied.

Accordingly, Nugent could not be ineffective in this respect.

Moreover, the fact that the trial court held Petitioner in

contempt did not require disqualification.  Unless a trial judge

becomes personally involved in the conflict (and Judge Pope did

not), disqualification is not required. See Oates v. State, 619

So. 2d 23, 25 (Fla. 4th DCA 1993); Sandstrom v. State, 402 So. 2d

461, 463 (Fla. App. 1981) ("A direct criminal contempt occurring

in the presence of a trial judge may be punished immediately and

summarily.  Under such circumstances, the trial judge need not

disqualify himself unless he has become directly and personally

embroiled."); Mayberry v. Pennsylvania, 400 U.S. 455, 463-64

(1971) ("[W]e do not say that the more vicious the attack on the

judge the less qualified he is to act.  A judge cannot be driven

out of a case.").

Finally, Petitioner's dissatisfaction with Judge Pope's

adverse rulings in this case or in Petitioner's previous criminal

trial does not constitute a legally sufficient ground for a

disqualification motion. See Jackson v. State, 599 So. 2d 103, 107

(Fla. 1992)("The fact that a judge has previously made adverse rulings is not an adequate ground for recusal."). Rather, in order to support a motion for disqualification, counsel would have had to allege facts "reasonably sufficient to create a well-founded fear in the mind of a party that he or she will not receive a fair trial." Fischer v. Knuck, 497 So. 2d 240, 242 (Fla. 1986). A motion for disqualification "must contain an actual factual foundation for the alleged fear of prejudice." Id. During the Rule 3.850 hearing, the post-conviction court noted that it saw nothing in the record to suggest that a motion to disqualify should have been filed (App. KK at 73, 74).[14] Nugent agreed, testifying that he had researched all the grounds given by Petitioner for a recusal motion and "found that the grounds [Petitioner] told [him] were not sufficient to have Judge Pope removed." Id. at 74. Indeed, this Court's review of the record shows nothing said or done by Judge Pope indicating that Petitioner could not receive a fair trial in his courtroom. To the contrary, Judge Pope's repeated warnings to Petitioner about his behavior at his pre-trial hearings and at trial showed considerable patience and restraint on the judge's part. Likewise, during sentencing, Judge

---

[14] Although Petitioner now asserts that Judge Pope was a "material witness" in this case, he provides no support for that assertion and appears to believe that he could force Judge Pope's disqualification merely be issuing a subpoena to call him as a witness (App. I at 7).

Pope cautioned Petitioner that if he repeated his outburst, he could be subject to another contempt charge but stated that "as far as the Court's concerned, your behavior was dealt with in the prior contempt citations and its resolved and not at issue here this morning." (App. P at 16).  Based upon the record, the Court cannot find that no reasonable attorney would have failed to make further motions for Judge Pope's recusal.  Accordingly, Claim Nine fails to satisfy <u>Strickland</u> and is denied pursuant to 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.  <u>Certificate of Appealability</u>[15]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such

---

[15] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." <u>Id.</u> As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El, 537 U.S. at 335-36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.   The Florida Attorney General is **DISMISSED** as a named Respondent.

2.   The 28 U.S.C. § 2254 petition for habeas corpus relief filed by Terry Powell (Doc. 1) is **DENIED.**

3.   Petitioner is **DENIED** a certificate of appealability.

4.   The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this __24th__ day of April, 2015.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Terry Powell
Counsel of Record